FILED

1  KILPATRICK TOWNSEND & STOCKTON LLP
   Megan M. Chung (SBN 232044)
2  Email: mchung@kilpatricktownsend.com
   12370 High Bluff Drive, Suite 400
3  San Diego, CA  92130
   Telephone: (858) 350 6100
4  Facsimile:  (858) 350-6111

5  Attorneys for Plaintiff Genetec Inc.

2011 FEB 24  PM 3: 53

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY_____

6

7

8                 UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10                      SOUTHERN DIVISION

11

12  GENETEC INC., a Canadian        CASE NO. _____
    corporation,                    CV 11-01660 PA(MANx)
13
              Plaintiff,            COMPLAINT FOR
14                                  DECLARATORY JUDGMENT OF
    v.                              PATENT NON-INFRINGEMENT
15                                  AND PATENT INVALIDITY
    JAMES SIMON, a California resident,
16                                  JURY TRIAL DEMANDED
              Defendant.
17

18

19     Plaintiff Genetec Inc. ("Genetec") hereby alleges as follows:

20                      **NATURE OF THE ACTION**

21     1.    This is an action for declaratory judgment of non-infringement and

22  invalidity of U.S. Patent No. 7,711,150 and U.S. Patent No. 7,881,498.

23                          **THE PARTIES**

24     2.    Plaintiff Genetec is a Canadian corporation having a principal place of

25  business at 2280 Alfred-Nobel Blvd., Suite 400, Saint-Laurent, Quebec, Canada

26  H4S 2A4.  Genetec is engaged in the business of, among other things, designing

27  and selling world-class IP security solutions encompassing license plate recog-

28  nition, video surveillance, and access control.

---

COMPLAINT FOR DECLARATORY JUDGMENT                                    1



1    3.    Upon information and belief, Defendant James Simon ("Simon") is a

2    United States citizen and California resident who resides at 8 Estates Drive, Villa

3    Park, California 92861.

4    **JURISDICTION AND VENUE**

5    4.    This action arises under the Declaratory Judgment Act, 28 U.S.C. §§

6    2201 *et seq.*, and under the Patent Laws of the United States, as enacted under Title

7    35 of the United States Code.  This Court has jurisdiction over this action pursuant

8    to 35 U.S.C. §§ 271 *et seq.* and 28 U.S.C. §§ 1331, 1338 and 2201-2202.

9    5.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and

10   1400(b) because a substantial part of the events giving rise to the claims at issue

11   occurred in this district.

12   6.    This Court has personal jurisdiction over Simon by virtue of his

13   residing within the Southern Division of this district and his business and other

14   activities within this district.

15   **SIMON'S PATENTS**

16   7.    U.S. Patent No. 7,711,150 (the "'150 patent"), which is entitled

17   "Autonomous Wide-Angle License Plate Recognition," issued on May 4, 2010.

18   The '150 patent is attached as Exhibit A.

19   8.    U.S. Patent No. 7,881,498 (the "'498 patent"), which is entitled

20   "Autonomous Wide-Angle License Plate Recognition," issued on February 1, 2011.

21   The '498 patent is attached as Exhibit B.

22   9.    Simon owns the '150 patent and the '498 patent, which are collectively

23   referred to as the "Simon Patents."

24   **SIMON'S ASSERTION OF THE SIMON PATENTS**

25   10.    On or about August 4, 2010, Simon's counsel sent Genetec a letter

26   alleging that Genetec infringed the '150 patent and demanding that Genetec cease

27   and desist from any further use of the allegedly infringing technology in the United

28   States or pay a license for the '150 patent.

COMPLAINT FOR DECLARATORY JUDGMENT                                          2

11.     On or about November 2, 2010, Simon's counsel once again wrote to Genetec alleging that Genetec infringed the '150 patent and requesting that Genetec pay a license for the '150 patent if it wanted to "resolve this matter outside of litigation."

12.     Simon's November 2 communication to Genetec included a claim chart purporting to compare claim 1 of the '150 patent to Genetec's AutoVu product in order to demonstrate how such product allegedly infringes the '150 patent. Simon's November 2 communication also included a claim chart purporting to compare claim 1 of then-pending published patent application US2010/0195871 (the "'871 application") to Genetec's AutoVu product in order to demonstrate how such product allegedly would infringe the patent that would ultimately issue from the '871 application.

13.     On December 6, 2010, Genetec sent certain prior art information to Simon's counsel regarding the invalidity of the '150 patent.

14.     On December 9, 2010, Simon's counsel wrote back to Genetec and asserted that the prior art information previously provided did not anticipate the '150 patent or claim 1 of the '871 application. Simon's counsel asserted that the '871 application provided "even stronger coverage in the allowed claims" than the '150 patent. Simon's counsel further stated that "Genetec's many US customers are clearly not beyond the scope of the courts."

15.     On December 17, 2010, Simon's counsel again wrote to Genetec. Regarding invalidating prior art, Simon's counsel stated that "But to avoid litigation we need proof of such prior art."

16.     On or about January 20, 2011, Simon's counsel wrote to a customer of Genetec's, ESI Companies in Memphis, Tennessee ("ESI"). This letter is attached as Exhibit C. With this letter, Simon's counsel provided ESI a claim chart comparing claims of the '150 patent and the '871 application to ESI's Skycop system that deploys Genetec's AutoVu technology. Simon's counsel further

1  demanded a payment for a license, provided a February 14, 2011 deadline for ESI

2  to respond, and stated that "In the absence of a suitable resolution, Mr. Simon will

3  be forced to consider other options to protect his intellectual property."

4      17.    The '871 application issued as the '498 patent on February 1, 2011.

5      18.    On February 8, 2011, Simon's counsel again wrote to Genetec about

6  the '150 patent and the '871 application and referenced the potential filing of a

7  lawsuit by Simon.

8      19.    Genetec has informed Simon's counsel that Genetec does not believe it

9  is required to license the Simon Patents, at least because the Simon Patents are

10  invalid.

**COUNT I**

**DECLARATORY JUDGMENT OF INVALIDITY AND**

**NON-INFRINGEMENT OF THE '150 PATENT**

**(28 U.S.C. §§ 2201-2202)**

15      20.    Genetec repeats and realleges the allegations of paragraphs 1-19 above

16  as if set forth fully herein.

17      21.    Simon has stated that certain of Genetec's products and methods

18  infringe the '150 patent and that Genetec is required to license the '150 patent.

19      22.    Genetec contends that it is not required to license the '150 patent

20  because Genetec has not infringed and does not infringe, either directly or

21  indirectly, any valid claim of the '150 patent.

22      23.    Genetec contends that one or more claims of the '150 patent are

23  invalid under 35 U.S.C. §§ 102, 103, and/or 112. For example, one or more claims

24  of the '150 patent are invalid under §§ 102 and 103 in view of products used and

25  sold in the U.S. as early as 2001 by Genetec's predecessor, AutoVu Technologies.

26      24.    As a result of the acts described in the foregoing paragraphs, there

27  exists a substantial controversy of sufficient immediacy and reality to warrant the

28  issuance of a declaratory judgment.

25.     An actual and justiciable controversy exists between Genetec and Simon as to whether the '150 patent is infringed by Genetec and/or is invalid. A judicial declaration is necessary and appropriate so that Genetec may ascertain its rights regarding the '150 patent.

26.     Genetec is also entitled to further necessary or proper relief based on the Court's declaratory judgment or decree.

**COUNT II**

**DECLARATORY JUDGMENT OF INVALIDITY AND**

**NON-INFRINGEMENT OF THE '498 PATENT**

**(28 U.S.C. §§ 2201-2202)**

27.     Genetec repeats and realleges the allegations of paragraphs 1-26 above as if set forth fully herein.

28.     Simon has stated that certain of Genetec's products and methods infringe the '498 patent and that Genetec is required to license the '498 patent.

29.     Genetec contends that it is not required to license the '498 patent because Genetec has not infringed and does not infringe, either directly or indirectly, any valid claim of the '498 patent.

30.     Genetec contends that one or more claims of the '498 patent are invalid under 35 U.S.C. §§ 102, 103, and/or 112. For example, one or more claims of the '498 patent are invalid under §§ 102 and 103 in view of products used and sold in the U.S. as early as 2001 by Genetec's predecessor, AutoVu Technologies.

31.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

32.     An actual and justiciable controversy exists between Genetec and Simon as to whether the '498 patent is infringed by Genetec and/or is invalid. A judicial declaration is necessary and appropriate so that Genetec may ascertain its rights regarding the '498 patent.

1      33.    Genetec is also entitled to further necessary or proper relief based on

2    the Court's declaratory judgment or decree.

3                    **PRAYER FOR RELIEF**

4      Wherefore, Genetec respectfully prays that the Court:

5      A.    Declare that Genetec has not and is not infringing, either directly or

6    indirectly, any valid claim of the '150 patent and that the '150 patent is invalid, as

7    requested by Count I of this action;

8      B.    Declare that Genetec has not and is not infringing, either directly or

9    indirectly, any valid claim of the '498 patent and that the '498 patent is invalid, as

10   requested by Count II of this action;

11     C.    For an award of all damages, including special damages, provable at

12   trial;

13     D.    An order enjoining Simon, his officers, directors, agents, counsel,

14   servants, and employees, and all persons in active concert or participation with any

15   of them, from charging infringement of or instituting any action for infringement of

16   the Simon Patents against Genetec and/or any of Genetec's customers or

17   downstream users of Genetec's products;

18     E.    An order declaring that Genetec is the prevailing party and that this is

19   an exceptional case under 35 U.S.C. § 285 and awarding Genetec its costs,

20   including attorneys' fees, in connection with this action; and

21     F.    Award Genetec such other relief as the Court deems just and proper.

22

23   Dated:  February 24, 2011

24

25

26                         FOR MEGAN CHUNG

                    Megan M. Chung

                    Attorneys for Plaintiff Genetec Inc.

27

28

1

## **DEMAND FOR JURY TRIAL**

2      Pursuant to Federal Rule of Civil Procedure 38(b) and Local Rule 38-1,

3  Genetec hereby demands a jury trial in this matter.

4

5  Dated:  February 24, 2011      Respectfully submitted,

6                KILPATRICK TOWNSEND & STOCKTON LLP

7

8      By: _Ellen Sun_ FOR MEGAN CHUNG

9          Megan M. Chung
           Attorneys for Plaintiff Genetec Inc.

63174445 v1

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY JUDGMENT                    7

# Exhibit "A"

US007711150B2

(12) **United States Patent**   (10) Patent No.:   **US 7,711,150 B2**

Simon   (45) Date of Patent:   **May 4, 2010**

(54) **AUTONOMOUS WIDE-ANGLE LICENSE PLATE RECOGNITION**

(76) Inventor: **James Simon**, 8 Estates Dr., Villa Park, CA (US) 92861

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 1042 days.

(21) Appl. No.: **10/546,555**

(22) PCT Filed: **Jul. 10, 2003**

(86) PCT No.: **PCT/US03/21958**

§ 371 (c)(1),
(2), (4) Date: **Aug. 22, 2005**

(87) PCT Pub. No.: **WO2005/015482**

PCT Pub. Date: **Feb. 17, 2005**

(65) **Prior Publication Data**

US 2006/0171564 A1   Aug. 3, 2006

(51) Int. Cl.
*G06K 9/00* (2006.01)

(52) U.S. Cl. .................................... **382/105**

(58) Field of Classification Search ................ 382/181, 382/182, 183, 318, 321, 100, 104, 105; 340/425.5, 340/426.1, 932.2, 933, 936, 969; 348/113–115
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

5,381,155 A * 1/1995 Gerber ..................... 342/104

| | | | | |
|---|---|---|---|---|
| 5,793,420 A | * | 8/1998 | Schmidt | 348/148 |
| 6,476,730 B2 | * | 11/2002 | Kakinami et al. | 340/932.2 |
| 2002/0080013 A1 | * | 6/2002 | Anderson et al. | 340/425.5 |
| 2002/0186297 A1 | * | 12/2002 | Bakewell | 348/118 |
| 2004/0201460 A1 | * | 10/2004 | Bucholz et al. | 340/426.1 |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| JP | 11-296785 | 10/1999 |
| KR | 2002032050 A  * | 5/2002 |

* cited by examiner

*Primary Examiner*—Samir A. Ahmed
*Assistant Examiner*—Atiba O Fitzpatrick
(74) *Attorney, Agent, or Firm*—Fish & Associates, PC

(57) **ABSTRACT**

A system in a moving surveillance vehicle operates in background mode to capture images of license plates of neighboring moving vehicles, which may occupy lanes other than the lane in which the surveillance vehicle is moving. The images are used to determine the license plate numbers of the moving vehicles, which are then checked against a database to determine whether there are any potential law enforcement-related problems that require the attention of the operator. If so, the system alerts the operator using an audible tone, visual prompt, vibration, or in some other suitable manner. The entire process, including generation of the alert can occur autonomously of the operator.

**15 Claims, 2 Drawing Sheets**





FIG. 1

U.S. Patent

May 4, 2010

Sheet 2 of 2

US 7,711,150 B2



*FIG. 2*

US 7,711,150 B2

1

## AUTONOMOUS WIDE-ANGLE LICENSE PLATE RECOGNITION

### FIELD OF THE INVENTION

The present invention relates generally to license plate recognition.

### BACKGROUND OF THE INVENTION

Traffic police, highway patrol and other mobile security personnel have a need to accurately and efficiently identify potential law enforcement problems with respect to nearby motor vehicles. One well-recognized strategy is to "run" license plate numbers of such vehicles against a database.

It is a well known practice for an officer in a patrol car to visually read a license plate of a target vehicle, and then call in the number to a support center. It is also known for an officer to utilize an on-board digital video camera to capture an image of the vehicle license plate of a parked vehicle, and even to use an on-board computer to analyze the image to determine the license plate number. In both cases, however, conscious effort is required on the part of the officer, which diverts attention from driving or other activities. In some cases the diversion of attention can be dangerous, and can even contribute to an otherwise preventable car accident.

A highly advanced license plate recognition and checking system is described in Japanese patent 11-296785, published on Oct. 29, 1999, the disclosure of which is incorporated herein in its entirety by reference. In that system the patrol car is provided with an on-board camera and camera controller, optical character recognition (OCR) software, a database, and a display device. While moving along a road, the driver places the patrol car in front of or behind the target car, and then triggers operation of the camera. The camera photographs the license plate of a preceding or following target vehicle, and sends the captured image to the on-board computer. OCR software running on the computer determines the license plate number, and applies that number against the on-board database. The results are displayed to the operator.

Apparently, the inventors of Japanese patent 11-296785 did not appreciate that (a) forcing the driver of the patrol car to maneuver his vehicle relative to the target vehicle, and (b) forcing the operator to trigger the camera, involve conscious efforts on the part of the driver, which preclude the system from operating in a truly autonomous fashion. The issue of being fully autonomous is not a mere design choice. Fully autonomous operation is not only safer and more thorough, it also has a particularly important function in countering accusations of racial profiling. If a system could be devised that would autonomously process license plate information of all vehicles in view of the camera, including vehicles in other lanes, then the operator could not be reasonably accused of focusing on any particular car or driver.

Thus, there is still a need for more fully autonomous surveillance of moving automotive vehicles from another moving vehicle.

### SUMMARY OF THE INVENTION

The present invention is generally directed to systems and methods in which a first moving vehicle (surveillance vehicle) captures vehicle license plate number information from a second moving vehicle in a fully autonomous fashion, and applies that information against a database to identify potential problems with the second vehicle or its driver. In preferred embodiments the surveillance vehicle is preferably

2

a police car or other patrol unit; and the second vehicles can be in any lane that is visible from the camera, including the same lane as that occupied by the first vehicle, other driving lanes, and even in parking areas or road shoulders.

A digital video camera with a wide-angle lens is preferably used to capture the license plate information. Alternatively, any other suitable image-capturing device could be used, including a still-image camera. The camera can advantageously be mounted on the front, rear, side or top of the surveillance vehicle, and preferably has a viewing angle range of at least 120°.

An on-board processor can either (a) perform optical character recognition on an acquired image to determine the license plate number, or (b) transmit at least a portion of the image to a remote site for that determination. The license plate number can then be applied against one or more databases, which can be local and/or remote to the camera and processor, to identify potential problems with the car or driver of the second vehicle.

Ideally, each of these functions is carried out continuously, in background mode without any input from the driver or other operator of the vehicle carrying the system. When potential problems are identified, the operator is notified using an auditory, visual or other alert.

Various objects, features, aspects and advantages of the present invention will become more apparent from the following detailed description of preferred embodiments of the invention, along with the accompanying drawings in which like numerals represent like components.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a side perspective view of a moving surveillance vehicle carrying a surveillance system according to the inventive subject matter, with neighboring vehicles in various lanes.

FIG. 2 is a schematic representation of the surveillance system of FIG. 1.

### DETAILED DESCRIPTION

FIG. 1 generally depicts a surveillance vehicle 10 equipped with a surveillance system 20 (see FIG. 2) that is driving along a roadway 30 in lane 32. Another vehicle 40 is traveling ahead of surveillance vehicle 10 in lane 22, while vehicles 42, 44 are traveling in the same direction as surveillance vehicle 10 in lane 34. Vehicles 46 and 48 are traveling in the oncoming direction in lane 36, across lane median 35. Surveillance system 20 generally comprises first and second digital video cameras 22A, 22B, a processor 24 (see FIG. 2), and a signal generator 28 (see FIG. 2).

The surveillance vehicle 10 will often be a patrol car 10, but can be any road or off-road vehicle, including jeeps, trucks, ambulances, buses, recreational vehicles, fire engines, and so forth. The neighboring vehicles 40, 42, 44, 46 and 48 can likewise be any combination of any types of vehicles, and will obviously be any combination of any types of vehicles, and will obviously be dispersed around the patrol car 10 in a manner that varies infinitely over time. Most of the neighboring vehicles 40, 42, 44, 46 and 48 will have rear license plates, and some can have front license plates. In this drawing, the relevant license plates for vehicles 40, 42, 44, 46 and 48 are 40A, 42A, 44A, 46A, and 48A, respectively.

Cameras 22A, 22B are mounted at the front and rear portions of surveillance vehicle 10. Mounting can be on the bumpers or anywhere else, and can even be located in other positions such as in the siren tower on top of the surveillance vehicle 10 or inside the cab behind the windshield. One or

US 7,711,150 B2

3

both of cameras 22A, 22B can be mounted in the center line of the surveillance vehicle 10, or off-center in any suitable manner. There must of course be at least one camera, which could provide front, rear, side or combination coverage. Second, third, and other cameras are optional. A person skilled in the art should recognize that more than two cameras could be mounted on surveillance vehicle 10 in suitable locations (e.g., front, rear, side or top of vehicle) to allow up to 360° license plate scan coverage.

Each camera 22A, 22B has a lens (not shown) that "sees" license plates within their respective viewing angles 24A, 24B. A wide-angle lens (not shown) is optional, and where present would preferably be a high-precision spherical lens adapted to minimize distortion and other aberrations for sharp and high-contrast images with a viewing angle range of about 75°-150°. Preferred viewing angles are at least 90°, more preferably at least 120°, still more preferably at least 150°, and most preferably at least 160°. Viewing angles 24A, 24B are shown as being pointed directly forward and aft of surveillance vehicle 10, but can alternatively be pointed in other directions as well. The viewing direction can optionally be motorized to scan a swath of area up, down, and sideways, or to point in a particular direction, and those functions can be automated and/or manual. As drawn, forward camera 22A can "see" license plates 40A, and 42A, but not license plate 48A. Rearward camera 22B can "see" license plate 44A, but not license plates 46A.

In FIG. 1 cameras 22A, 22B are ordinary video cameras. Other types of cameras can be used, including still cameras, charge-coupled device cameras for higher resolution, infra-red cameras for night operations, and so forth. The focus is most likely set to infinite, but there can also be an automatic focusing mechanism (not shown). One of both of cameras 20, 22 can be advantageously provided with illumination, which can be in the form of a controlled light source (not shown) adapted to brighten vehicle license plates during the day and/or allow camera operation during the night. Alternatively, the illumination means can be an infra-red (IR) light source, i.e. invisible to the driver of the neighboring vehicles.

In FIG. 2 surveillance system 20 generally comprises first and second digital video cameras 22A, 22B, a processor 24, memory 26, and an alert generator 28.

Processor 24 can be any suitable processor, including for example CPU(s) (central processing unit(s)) made by Intel Corp. (e.g., Pentium®, Xeon®), AMD (e.g., Athlon®), etc. Motorola, IBM, etc., I/O (input/output) circuits, communication bus links, etc. Processor 24 receives digital image data input from cameras 22A, 22B, and processes the data software resident in memory 27. The software preferably includes an operating system (OS) (e.g., Windows®, Linux®, Unix®, Free BSD®, etc.), and optical character recognition programs.

Memory 27 can also advantageously include county-wide, state-wide, nation-wide, or even multi-country vehicle license plate number data, as well as related information of interest such as law enforcement-related data. Information that is not available on-board the surveillance vehicle 10 can be accessed wirelessly from a remote facility 60. In that case system 20 would need to be adapted for wireless connection using communication hardware 29.

Optical character recognition preferably occurs on board vehicle 10, but may alternatively or additionally occur in the remote facility 60, or elsewhere. Any suitable OCR software can be used, such as that of Hi-Tech Solutions, currently available through www.htsol.com. Many suitable OCR algorithms operate in three stages. The first stage involves vectorizing the captured (raster) image. The second stage deals with

4

isolation of the vectors that describe the raster image. The third stage performs the subsequent alphanumeric character recognition to generate a plate string. More details on suitable theory, methods and algorithms can be found on the World-Wide-Web at: http://www.cae.wisc.edu/~woochull/course/lpr.html; http://www.cs.technion.ac.il/Labs/Isl/Project/Projects_done/cars_plates/finalreport.htm; http://www.singaporegateway.com/optasia/imps, or in numerous literature sources such as, for example, "Computer Graphics: Principles and Practice", Foley, van Dam, Flener, and Hughes, Addison Wesley, Reading, Mass., 1990; which are incorporated herein by reference.

To lower cost, the processor 24, memory 28, and communication hardware 29 would generally be included as part of a laptop or other computer (shown generally as component 21) that had already been installed in vehicle 10 for other purposes. Alternatively, processor 40, memory 42, GUI 50, local license plate number database module 44, and speaker 46 can be implemented as an integral part of cameras 22A, 22B.

The network used to communicate with remote facility 60 could be the same network already being used by computer 21, or could be some other network. Transmission of license plate data between processor 24 and remote facility 60 can be encrypted using any suitable data encryption algorithms to ensure data security.

Processor 24 cooperates with one or more alert devices, such as speaker 28A, computer display 28B, or vibratory interface 28C. Alternatively, processor 24 can utilize any other speaker (not shown) in the vehicle 10.

The entire system 20 is preferably programmed to operate autonomously in background mode, i.e., without any input being required from the operator. The operator is preferably only alerted where the system 20 has identified a possible law enforcement-related problem using the captured license plate information. System 20 can be designed to operate continuously for an extended period of time while vehicle 10 is patrolling the streets/highways, and can be turned on and off by the operator as desired.

Multiple instances of system 20 can be installed and operated on multiple surveillance vehicles for more efficient license plate number check coverage, and the various systems may cooperate with each other by exchanging information. System 20 can also be operated in conjunction with global satellite or other positioning systems (not shown). Thus, for example, one squad car may identify a neighboring vehicle at a given location, and another squad car may identify the same vehicle 30 minutes later at another location. By calculating the distance traveled by the targeted vehicle, the system could calculate the minimum speed that the target vehicle traveled during that time frame. The vehicle license data gathered by system 20 during routine surveillance patrols could also be used for other than law enforcement purposes, as needed and/or authorized by local law regulations.

A contemplated method includes the following steps: The processor 26 activates one or more cameras 22A, 22B, which capture images of nearby vehicle license plates. The captured information is read by a frame grabber in each camera. Pixel output from the frame grabber(s) is passed by the processor 26 through image processing software algorithms to enhance the image, if necessary, detect the vehicle license plate position, and through OCR software algorithms determine a license plate number. The processor then checks the license plate number against corresponding data records stored in memory 28, or in remote license plate number facility 60, for potential law enforcement-related vehicle problems. If a problem is identified, the operator (not shown) is alerted

US 7,711,150 B2

5

audibly, visually or in a vibratory manner using one or more of speaker 28A, computer display 28B, or vibratory interface 28C, respectively.

While the present invention has been described in detail with regards to the preferred embodiments, it should be appreciated that various modifications and variations can be made in the present invention without departing from the scope or spirit of the invention. In this regard it is important to note that practicing the invention is not limited to the applications described hereinabove. Many other applications and/or alterations can be utilized provided that such other applications and/or alterations do not depart from the intended purpose of the present invention. Also, features illustrated or described as part of one embodiment can be used in another embodiment to provide yet another embodiment such that the features are not limited to the specific embodiments described above. Thus, it is intended that the present invention cover all such embodiments and variations as long as such embodiments and variations come within the scope of the appended claims and their equivalents.

What is claimed is:

1. A system for alerting an operator of a moving surveillance vehicle with respect to first and second license plates on moving first and second target vehicles within camera surveillance distance of the surveillance vehicle, respectively, comprising:

  at least first and second cameras mounted on the surveillance vehicle, and collectively configured to capture, without a need for input from the operator, images of each of the license plates of the target vehicles regardless of whether the target vehicles are in a same lane as the surveillance vehicle, or in left or right adjacent lanes to that of the surveillance vehicle; and

  at least one processor carried by the surveillance vehicle that continuously uses character recognition to determine the first and second license plate numbers only upon discovering that there is a potential problem related to the second or third moving vehicles, all without a need for input from the operator.

2. The system of claim 1, wherein the surveillance vehicle comprises a police patrol unit.

6

3. The system of claim 1, wherein the first camera comprises a motion video camera.

4. The system of claim 1, wherein the first camera comprises a still image camera.

5. The system of claim 1, wherein the first camera is mounted at the front of the first vehicle.

6. The system of claim 5, wherein the second camera is mounted at the rear of the first vehicle.

7. The system of claim 1, wherein the first camera has a viewing angle of is at least 160 degrees.

8. The system of claim 1, wherein the first camera has sufficient sensitivity to identify the first license plate number while the first target vehicle is moving at a speed of at least 50 kilometers per hour.

9. The system of claim 1, wherein the processor is programmed to access a license plate database local to the surveillance vehicle.

10. The system of claim 1, wherein the processor is programmed to transmit at least a portion of at least one of the images to a remote facility for license plate recognition.

11. The system of claim 1, wherein the processor is programmed to receive information related to the potential problem from a remote facility.

12. The system of claim 1, further comprising an auditory alert that alerts the operator to the existence of the potential problem.

13. The system of claim 1, further comprising a non-auditory alert that alerts the operator to the existence of the potential problem.

14. The system of claim 1, wherein the surveillance vehicle comprises a police patrol unit, the first camera has a viewing angle of at least 160 degrees, and the processor is programmed to access a database local to the first vehicle.

15. The system of claim 1, wherein the surveillance vehicle comprises a police patrol unit, the camera has a viewing angle of at least 160 degrees, and the processor is programmed to transmit at least a portion of at least one of the images to a remote facility for license plate recognition.

*  *  *  *  *

# Exhibit "B"



US007881498B2

(12) **United States Patent**                    (10) Patent No.:     **US 7,881,498 B2**
Simon                                           (45) Date of Patent:        **Feb. 1, 2011**

(54) **AUTONOMOUS WIDE-ANGLE LICENSE PLATE RECOGNITION**

(76) Inventor: **James Simon**, 8 Estates Dr., Villa Park, CA (US) 92861

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **12/757,262**

(22) Filed: **Apr. 9, 2010**

(65) **Prior Publication Data**

US 2010/0195871 A1      Aug. 5, 2010

**Related U.S. Application Data**

(63) Continuation of application No. 10/546,555, filed as application No. PCT/US03/21958 on Jul. 10, 2003, now Pat. No. 7,711,150.

(51) **Int. Cl.**
*G06K 9/00* (2006.01)

(52) **U.S. Cl.** ...................................... **382/105**

(58) **Field of Classification Search** ................. 382/100, 382/104, 105, 181, 182, 183, 318, 321; 340/425.5, 340/426.1, 932.2, 933, 936, 969; 348/113–115
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,381,155 | A | 1/1995 | Gerber |
| 5,793,420 | A | 8/1998 | Schmidt |
| 6,476,730 | B2 | 11/2002 | Kakinami et al. |
| 2002/0080013 | A1 | 6/2002 | Anderson et al. |
| 2002/0186297 | A1 | 12/2002 | Bakewell |
| 2004/0201460 | A1 | 10/2004 | Bucholz et al. |

Primary Examiner—Samir A Ahmed
Assistant Examiner—Atiba O Fitzpatrick
(74) Attorney, Agent, or Firm—Fish & Associates, PC

(57) **ABSTRACT**

A system in a moving surveillance vehicle operates in background mode to capture images of license plates of neighboring moving vehicles, which may occupy lanes other than the lane in which the surveillance vehicle is moving. The images are used to determine the license plate numbers of the moving vehicles, which are then checked against a database to determine whether there are any potential law enforcement-related problems that require the attention of the operator. If so, the system alerts the operator using an audible tone, visual prompt, vibration, or in some other suitable manner. The entire process, including generation of the alert can occur autonomously of the operator.

**11 Claims, 2 Drawing Sheets**



FIG. 1

U.S. Patent

Feb. 1, 2011

Sheet 2 of 2

US 7,881,498 B2

*FIG. 2*

US 7,881,498 B2

1

# AUTONOMOUS WIDE-ANGLE LICENSE PLATE RECOGNITION

This application is a continuation of U.S. patent application Ser. No. 10/546,555 filed Aug. 22, 2005 which is a U.S. National Phase of PCT/US03/21958 filed Jul. 10, 2003. These and all other extrinsic materials discussed herein are incorporated by reference in their entirety. Where a definition or use of a term in an incorporated reference is inconsistent or contrary to the definition of that term provided herein, the definition of that term provided herein applies and the definition of that term in the reference does not apply.

## FIELD OF THE INVENTION

The present invention relates generally to license plate recognition.

## BACKGROUND OF THE INVENTION

Traffic police, highway patrol and other mobile security personnel have a need to accurately and efficiently identify potential law enforcement problems with respect to nearby motor vehicles. One well-recognized strategy is to "run" license plate numbers of such vehicles against a database.

It is a well known practice for an officer in a patrol car to visually read a license plate of a target vehicle, and then call in the number to a support center. It is also known for an officer to utilize an on-board digital video camera to capture an image of the vehicle license plate of a parked vehicle, and even to use an on-board computer to analyze the image to determine the license plate number. In both cases, however, conscious effort is required on the part of the officer, which diverts attention from driving or other activities. In some cases the diversion of attention can be dangerous, and can even contribute to an otherwise preventable car accident.

A highly advanced license plate recognition and checking system is described in Japanese patent 11-296785, published on Oct. 29, 1999, the disclosure of which is incorporated herein in its entirety by reference. In that system the patrol car is provided with an on-board camera and camera controller, optical character recognition (OCR) software, a database, and a display device. While moving along a road, the driver places the patrol car in front of or behind the target car, and then triggers operation of the camera. The camera photographs the license plate of a preceding or following target vehicle, and sends the captured image to the on-board computer. OCR software running on the computer determines the license plate number, and applies that number against the on-board database. The results are displayed to the operator.

Apparently, the inventors of Japanese patent 11-296785 did not appreciate that (a) forcing the driver of the patrol car to maneuver his vehicle relative to the target vehicle, and (b) forcing the operator to trigger the camera, involve conscious efforts on the part of the driver, which preclude the system from operating in a truly autonomous fashion. The issue of being fully autonomous is not only safer and more thorough, it also has a particularly important function in countering accusations of racial profiling. If a system could be devised that would autonomously process license plate information of all vehicles in view of the camera, including vehicles in other lanes, then the operator could not be reasonably accused of focusing on any particular car or driver.

Thus, there is still a need for more fully autonomous surveillance of moving automotive vehicles from another moving vehicle.

2

## SUMMARY OF THE INVENTION

The present invention is generally directed to systems and methods in which a first moving vehicle (surveillance vehicle) captures vehicle license plate number information from a second moving vehicle in a fully autonomous fashion, and applies that information against a database to identify potential problems with the second vehicle or its driver. In preferred embodiments the surveillance vehicle is preferably a police car or other patrol unit; and the second vehicles can be in any lane that is visible from the camera, including the same lane as that occupied by the first vehicle, other driving lanes, and even in parking areas or road shoulders.

A digital video camera with a wide-angle lens is preferably used to capture the license place information. Alternatively, any other suitable image-capturing device could be used, including a still-image camera. The camera can advantageously be mounted on the front, rear, side or top of the surveillance vehicle, and preferably has a viewing angle range of at least 120°.

An on-board processor can either (a) perform optical character recognition on an acquired image to determine the license plate number, or (b) transmit at least a portion of the image to a remote site for that determination. The license plate number can then be applied against one or more databases, which can be local and/or remote to the camera and processor, to identify potential problems with the car or driver of the second vehicle.

Ideally, each of these functions is carried out continuously, in background mode without any input from the driver or other operator of the vehicle carrying the system. When potential problems are identified, the operator is notified using an auditory, visual or other alert.

Various objects, features, aspects and advantages of the present invention will become more apparent from the following detailed description of preferred embodiments of the invention, along with the accompanying drawings in which like numerals represent like components.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a side perspective view of a moving surveillance vehicle carrying a surveillance system according to the inventive subject matter, with neighboring vehicles in various lanes.

FIG. 2 is a schematic representation of the surveillance system of FIG. 1.

## DETAILED DESCRIPTION

FIG. 1 generally depicts a surveillance vehicle 10 equipped with a surveillance system 20 (see FIG. 2) that is driving along a roadway 30 in lane 32. Another vehicle 40 is traveling ahead of surveillance vehicle 10 in lane 32, while vehicles 42, 44 are traveling in the same direction as surveillance vehicle 10 in lane 34. Vehicles 46 and 48 are traveling in the oncoming direction in lane 36, across low median 35. Surveillance system 20 generally comprises first and second digital video cameras 22A, 22B, a processor 26 (see FIG. 2), and an alert generator (see FIG. 2, 28A-28C).

The surveillance vehicle 10 will often be a patrol car, but can be any road or off-road vehicle, including jeeps, trucks, ambulances, buses, recreational vehicles, fire engines, and so forth. The neighboring vehicles 40, 42, 44, 46 and 48 can likewise be any combination of any types of vehicles, and will obviously be dispersed around the surveillance vehicle 10 in a manner that varies infinitely over time. Most of the neigh-

3

boring vehicles 40, 42, 44, 46 and 48 will have rear license plates, and some can have front license plates. In this drawing, the relevant license plates for vehicles 40, 42, 44, 46 and 48 are 40A, 42A, 44A, 46A, and 48A, respectively.

Cameras 22A, 22B are mounted at the front and rear portions of surveillance vehicle 10. Mounting can be on the bumpers or anywhere else, and can even be located in other positions such as in the siren tower on top of the surveillance vehicle 10 or inside the cab behind the windshield. One or both of cameras 22A, 22B can be mounted in the center line of the surveillance vehicle 10, or off-center in any suitable manner. There must of course be at least one camera, which could provide front, rear, side or combination coverage. Second, third, and other cameras are optional. A person skilled in the art should recognize that more than two cameras could be mounted on surveillance vehicle 10 in suitable locations (e.g., front, rear, side or top of vehicle) to allow up to 360° license plate scan coverage.

Each camera 22A, 22B has a lens (not shown) that "sees" license plates within their respective viewing angles 24A, 24B. A wide-angle lens (not shown) is optional, and where present would preferably be a high-precision spherical lens adapted to minimize distortion and other aberrations for sharp and high-contrast images with a viewing angle range of about 75°-150°. Preferred viewing angles are at least 90°, more preferably at least 120°, still more preferably at least 150°, and most preferably at least 160°. Viewing angles 24A, 24B are shown as being pointed directly forward and aft of surveillance vehicle 10, but can alternatively be pointed in other directions as well. The viewing direction can optionally be motorized to scan a swath of area up, down, and sideways, or to point in a particular direction, and those functions can be automated and/or manual. As drawn, forward camera 22B can "see" license plates 40A, and 42A, but not license plate 48A. Rearward camera 22A can "see" license plate 44A, and license plate 46A.

In FIG. 1 cameras 22A, 22B are ordinary video cameras. Other types of cameras can be used, including still cameras, charge-coupled device cameras for higher resolution, infrared cameras for night operations, and so forth. The focus is most likely set to infinite, but there can also be an automatic focusing mechanism (not shown). One or both of cameras 20, 22 can be advantageously provided with illumination, which can be in the form of a controlled light source (not shown) adapted to brighten vehicle license plates during the day and/or allow camera operation during the night. Alternatively, the illumination means can be an infra-red (IR) light source, i.e. invisible to the driver of the neighboring vehicles.

In FIG. 2 surveillance system 20 generally comprises first and second digital video cameras 22A, 22B, a processor 26, memory 24, and an alert generator (see FIG. 2, 28A-28C).

Processor 26 can be any suitable processor, including for example CPU(s) (central processing unit(s)) made by Intel Corp. (e.g., Pentium®, Xeon®), AMD (e.g., Athlon®), Motorola, IBM, etc., I/O (input/output) circuits, communication bus links, etc. Processor 26 receives digital image data input from cameras 22A, 22B, and processes the data software resident in memory 24. The software preferably includes an operating system (OS) (e.g., Windows®, Linux®, Unix®, Free BSD®, etc.), and optical character recognition programs.

Memory 24 can also advantageously include county-wide, state-wide, nation-wide, or even multi-country vehicle license plate number data, as well as related information of interest such as law enforcement-related data. Information that is not available on-board the surveillance vehicle 10 can be accessed wirelessly from a remote facility 60. In that case

4

system 20 would need to be adapted for wireless connection using communication hardware 29.

Optical character recognition preferably occurs on board vehicle 10, but may alternatively or additionally occur in the remote facility 60, or elsewhere. Any suitable OCR software can be used, such as that of Hi-Tech Solutions, currently available through www.htsol.com. Many suitable OCR algorithms operate in three stages. The first stage involves vectorizing the captured (raster) image. The second stage deals with isolation of the vectors that describe the raster image. The third stage performs the subsequent alphanumeric character recognition to generate a plate string. More details on suitable theory, methods and algorithms can be found on the World-Wide-Web at: http://www.cae.wisc.edu/~woochull/course/ lpr.html;    http://www.cs.technion.ac.il/Labs/lsl/Project/ Projects_done/cars_plates/finalreport.htm;    http:// www.singaporegateway.com/optasia/imps, or in numerous literature sources such as, for example, "Computer Graphics: Principles and Practice", Foley, van Dam, Flener, and Hughes, Addison Wesley, Reading, Mass., 1990; which are incorporated herein by reference.

To lower cost, the processor 26, memory 24, and communication hardware 29 would generally be included as part of a laptop or other computer (shown generally as component 21) that had already been installed in vehicle 10 for other purposes. Alternatively, processor 26, memory 24, display 28B, and speaker 28A can be implemented as an integral part of cameras 22A, 22B.

The network used to communicate with remote facility 60 could be the same network already being used by computer 21, or could be some other network. Transmission of license plate data between processor 24 and remote facility 60 can be encrypted using any suitable data encryption algorithms to ensure data security.

Processor 26 cooperates with one or more alert devices, such as speaker 28A, computer display 28B, or vibratory interface 28C. Alternatively, processor 26 can utilize any other speaker (not shown) in the vehicle 10.

The entire system 20 is preferably programmed to operate autonomously in background mode, i.e., without any input being required from the operator. The operator is preferably only alerted where the system 20 has identified a possible law enforcement-related problem using the captured license plate information. System 20 can be designed to operate continuously for an extended period of time while vehicle 10 is patrolling the streets/highways, and can be turned on and off by the operator as desired.

Multiple instances of system 20 can be installed and operated on multiple surveillance vehicles for more efficient license plate number check coverage, and the various systems may cooperate with each other by exchanging information. System 20 can also be operated in conjunction with global satellite or other positioning systems (not shown). Thus, for example, one squad car may identify a neighboring vehicle at a given location, and another squad car may identify the same vehicle 30 minutes later at another location. By calculating the distance traveled by the targeted vehicle, the system could calculate the minimum speed that the target vehicle traveled during that time frame. The vehicle license data gathered by system 20 during routine surveillance patrols could also be used for other than law enforcement purposes, as needed and/or authorized by local law regulations.

A contemplated method includes the following steps: The processor 26 activates one or more cameras 22A, 22B, which capture images of nearby vehicle license plates. The captured information is read by a frame grabber in each camera. Pixel output from the frame grabber(s) is passed by the processor

US 7,881,498 B2

5

26 through image processing software algorithms to enhance the image, if necessary, detect the vehicle license plate position, and through OCR software algorithms determine a license plate number. The processor then checks the license plate number against corresponding data records stored in memory 24, or in remote license plate number facility 60, for potential law enforcement-related vehicle problems. If a problem is identified, the operator (not shown) is alerted audibly, visually or in a vibratory manner using one or more of speaker 28A, computer display 28B, or vibratory interface 28C, respectively.

While the present invention has been described in detail with regards to the preferred embodiments, it should be appreciated that various modifications and variations can be made in the present invention without departing from the scope or spirit of the invention. In this regard it is important to note that practicing the invention is not limited to the applications described hereinabove. Many other applications and/or alterations can be utilized provided that such other applications and/or alterations do not depart from the intended purpose of the present invention. Also, features illustrated or described as part of one embodiment can be used in another embodiment to provide yet another embodiment such that the features are not limited to the specific embodiments described above. Thus, it is intended that the present invention cover all such embodiments and variations as long as such embodiments and variations come within the scope of the appended claims and their equivalents.

What is claimed is:

1. A method of surveilling multiple target vehicles from a surveillance vehicle, comprising:

providing or operating the surveillance vehicle with a camera system disposed to capture license plate information on each of the target vehicles regardless of whether the target vehicles are in a same lane as the surveillance vehicle, or in left or right adjacent lanes to that of the surveillance vehicle, while the surveillance vehicle and the target vehicles are all moving; and

providing or operating the surveillance vehicle with a computer programmed to use the license plate information to determine license plate numbers for each of the target

6

vehicles, and alert an operator of the surveillance vehicle only upon discovering that there is a potential problem related to one of the target vehicles, all without a need for input from the operator.

2. The method of claim 1, wherein a first one of the target vehicles is traveling in the same lane as the surveillance vehicle, and concurrently a second one of the target vehicles is traveling in the left lane adjacent to that of the surveillance vehicle, and concurrently a third one of the target vehicles is traveling in the right lane adjacent to that of the surveillance vehicle.

3. The method of claim 2, wherein the computer is further programmed to discover the potential problem at least in part by comparing the license plate numbers to data in a database.

4. The method of claim 3, further comprising the computer accessing the database from a source local to the surveillance vehicle.

5. The method of claim 3, further comprising the computer accessing the database from a source distal to the surveillance vehicle.

6. The method of claim 2, wherein the camera system comprises a first camera mounted at a front portion of the surveillance vehicle, and a second camera is mounted at a rear portion of the surveillance vehicle.

7. The method of claim 2, further comprising alerting the operator of the surveillance vehicle of the potential problem while the surveillance vehicle is traveling at a speed at least 50 kilometers per hour.

8. The method of claim 2, further comprising transmitting at least a portion of at least one image captured by the camera system to a remote facility for license plate recognition.

9. The method of claim 2, further comprising, transmitting at least one of the license plate numbers to a remote facility to determine the potential problem.

10. The method of claim 2, further comprising using a sound to alert the operator of the existence of the potential problem.

11. The method of claim 2, further comprising using a non-auditory alert to apprise the operator of the existence of the potential problem.

*   *   *   *   *

# Exhibit "C"



Fish & Associates, PC
2603 Main Street
Suite 1000
Irvine, CA 92614-4271
Main: 949 943 8300
Fax: 949 943 8358
info@fishiplaw.com

January 20, 2011

Mr. John Osteen
Vice President of Sales
ESI Companies
1864 Vanderhorn Dr.
Memphis, TN 38134

RE:   URGENT – Patent Infringement by ESI Companies
      Our Ref: 101040.0002

Dear Mr. Osteen:

Our firm represents James Simon in his intellectual property matters.  Mr. Simon is the owner of recently issued U.S. Patent No. 7,711,150 ("the '150 Patent") and recently allowed US Patent Application Publication No. 2010/0195871 ("the '871 Application").  The '150 Patent and the '871 Application are directed to automatic license plate recognition (ALPR) systems.  A copy of each has been enclosed for your review.

Recently, it has come to our client's attention that ESI Companies. (hereinafter "ESI"), sells an automatic license plate recognition system, named Skycop Mobile License Plate Recognition & Video Surveillance System (MLPRV).

Based on ESI's web site at http://skycopvideo.com/home and the associated webpages, the Skycop MLPRV system appears to fall within the scope of one or more of the claims of the '150 Patent and the '871 Application.  A claim chart containing a preliminary infringement analysis of ESI's system for claim one of the '150 Patent and '871 Application are enclosed for your review.

As ESI undoubtedly understands, unlicensed and uncontrolled use of Mr. Simon's technology interferes with his legitimate business and licensing activities.  Therefore, on behalf of Mr. Simon we demand that ESI, its agents, employees, principals, officers, directors, servants, assigns, attorneys and all persons and/or entities in privity and/or concert with it, immediately cease and desist any and all further use of ESI's infringing technology.

To resolve this matter Mr. Simon is willing to negotiate a mutually advantageous license agreement.  Mr. Simon is currently negotiating settlements with other license plate recognition distributors and expects to settle at $60,000 for a fully paid up license.  We are hopeful that this matter can be resolved expeditiously and amicably, and request a written response from ESI or its counsel by the close of business on **February 14, 2011**.  In the absence of a suitable resolution, Mr. Simon will be forced to consider other options to protect his intellectual property.

Letter to ESI Companies
January 20, 2011
Page 2


Should you have any questions, please do not hesitate to contact us.

This letter does not constitute a complete statement of Mr. Simon's claims, rights, or remedies with respect to this matter, all of which are hereby expressly reserved.

Sincerely,

Robert D. Fish, Esq.

RDF:vw
Enclosures

Table 1

| US7711150 (Simon) | Skycop MLPRV System |
|---|---|
| 1. A system for alerting an operator of a moving surveillance vehicle with respect to first and second license plates on moving first and second target vehicles within camera surveillance distance of the surveillance vehicle, respectively, comprising: | Skycop can be installed on moving police cars and can be used to read license plates of moving target vehicles.<br><br>Skycop provides automatic alerts to the police car operator during real-time operation.<br><br>Skycop deploys Genetec AutoVu technology. AUTOVU Patroller cameras are installed on police cars and can read license plates of moving vehicles. Autovu alerts the driver of "wanted" vehicles or vehicles of interest. AUTOVU can read license plate numbers of cars moving up to 140 mph (differential speeds). |
| at least first and second cameras mounted on the surveillance vehicle, | Skycop can be used on a moving police car.<br><br>Skycop deploys Genetec AutoVu technology. AUTOVU Patroller can work with two camera feeds (CCTV camera integration). |
| and collectively configured to capture, without a need for input from the operator, images of each of the license plates of the target vehicles | Skycop deploys Genetec AutoVu technology. AUTOVU Patroller automates the collection and verification of license plates. AUTOVU deciphers license plate numbers using Fuzzy matching and OCR equivalents. Once license plate numbers are read, they are compared to a database of vehicles of interest. |
| regardless of whether the target vehicles are in a same lane as the surveillance vehicle, or in left or right adjacent lanes to that of the surveillance vehicle; and | Skycop deploys Genetec AutoVu technology. AUTOVU Patroller cameras can read license plate numbers in up to two lanes of traffic on either side of the vehicle. AUTOVU can also read cars parked in parallel at 45 and 90 degree angles. |
| at least one processor carried by the surveillance vehicle | Skycop deploys Genetec AutoVu technology. AUTOVU Patroller software can be installed on a patroller car's computer. |
| that continuously uses character recognition to determine the first and second license plate numbers, | Skycop deploys Genetec AutoVu technology. AUTOVU Patroller uses OCR and fuzzy matching to decipher license plate numbers. AUTOVU Patroller automates the license plate recognition and matching, running in the background without the need for user interaction. |
| and to alert the operator only upon discovering that there is a potential problem related to the first or second target vehicle, | Skycop can compare the read license plates to hotlists and automatically alert the police car driver of a hit.<br><br>Skycop deploys Genetec AutoVu technology. AUTOVU Patroller alerts the users of license plates of wanted felons or amber alert suspected vehicles, scofflaw vehicles, or vehicles in parking violations. |
| all without a need for input from the operator. | Skycop provides automatic alerts in real-time operation. |

|  | Skycop deploys Genetec AutoVu technology. AUTOVU Patroller automates the license plate recognition and matching, running in the background without the need for user interaction. |
| --- | --- |

Table 2

| US2010/0195871A1 (Simon) | Skycop MLPRV System |
| --- | --- |
| A method of surveilling multiple target vehicles from a surveillance vehicle, comprising: | Skycop deploys Genetec AutoVu technology. AUTOVU can read license plates from multiple cars spanning two adjacent lanes of traffic. |
| providing or operating the surveillance vehicle with a camera system disposed to capture license plate information on each of the target vehicles | Skycop uses cameras installed on moving police cars to read license plates of target vehicles. <br><br> Skycop deploys Genetec AutoVu technology. AUTOVU reads images from cameras mounted on the patrol car and deciphers license plate numbers via OCR. |
| regardless of whether the target vehicles are in a same lane as the surveillance vehicle, or in left or right adjacent lanes to that of the surveillance vehicle, | Skycop deploys Genetec AutoVu technology. AUTOVU cameras can read license plate numbers in up to two lanes of traffic on either side of the vehicle. AUTOVU can also read cars parked in parallel at 45 and 90 degree angles. |
| while the surveillance vehicle and the target vehicles are all moving; and | Skycop can read license plates of moving vehicles from a moving police car. <br><br> Skycop deploys Genetec AutoVu technology. AUTOVU is installed on a patrol car and can read license plates of moving vehicles while the patrol car is moving up to 140 mph (differential speed). |
| providing or operating the surveillance vehicle with a computer programmed to use the license plate information to determine license plate numbers for each of the target vehicles, | Skycop deploys Genetec AutoVu technology. AUTOVU software is installed on a patrol car's computer. The software deciphers license plate numbers using OCR and compares the number to a database of vehicles of interest. |
| and alert an operator of the surveillance vehicle only upon discovering that there is a potential problem related to one of the target vehicles, | Skycop can automatically alert the police car driver in real-time operation when license plates of vehicles on a hotlist are detected. <br><br> Skycop deploys Genetec AutoVu technology. AUTOVU alerts the user when a license plate number of interest has been identified, for example, wanted felons or amber alert suspected vehicles, scofflaw vehicles, or vehicles in parking violations. |
| all without a need for input from the operator. | Skycop automatically alerts the police car driver in real-time operation. <br><br> Skycop deploys Genetec AutoVu technology. AUTOVU automates the license plate recognition |

| | and matching, running in the background without the need for user interaction. |
|---|---|

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Percy Anderson and the assigned discovery Magistrate Judge is Margaret A. Nagle.

The case number on all documents filed with the Court should read as follows:

### CV11- 1660 PA (MANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)       NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| GENETEC INC., a Canadian corporation,<br><br>_____<br>*Plaintiff*<br>v.<br>JAMES SIMON, a California resident,<br>_____<br>*Defendant* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No.  **CV 11-01660 PA(MANx)**

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   JAMES SIMON
8 Estates Drive
Villa Park, CA  92861

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Megan M. Chung
Kilpatrick Townsend & Stockton LLP
12730 High Bluff Drive
Suite 400
San Diego, CA  92130

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: FEB 24 '11   _____
*Signature of Clerk or Deputy Clerk*
J. Barrera

 

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
GENETEC, INC.

**DEFENDANTS**
JAMES SIMON

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

KILPATRICK TOWNSEND & STOCKTON LLP
Megan M. Chung, (Bar No. 232044)
12730 High Bluff Drive, #400, San Diego, CA 92130

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☐ No   ☐ **MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. Sec 2201 - Declaratory Judgment of Patent Non-Infringement and Patent Invalidity

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☒ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 630 Liquor Laws | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | **IMMIGRATION** | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | | | | |

## CV 11-01660 PA(MANx)

**FOR OFFICE USE ONLY:** Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)                          CIVIL COVER SHEET                          Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No  ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                              ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                              ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                              ☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Plaintiff:  Genetec - a Canadian Corporation |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Defendant:  James Simon - Los Angeles County |  |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
        Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  |  |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date February 24, 2011

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program.  (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |